Don J. Foty
Texas Bar No. 24050022
(*pro hac vice motion forthcoming*)
Fazila Issa
Texas Bar No. 24046136
(*pro hac vice motion forthcoming*)
FOTY LAW GROUP
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Telephone:  713-523-0001
Facsimile:  713-523-1116
dfoty@fotylawgroup.com
fissa@fotylawgroup.com

Attorney for Plaintiffs and the Putative Class

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **KRISTA WILKINSON and CHANTEL ARRIOLA, On Behalf of Themselves and All Others Similarly Situated,** ) ) ) ) | **CASE NO:** _____ |
| | **PLAINTIFFS' CLASS ACTION COMPLAINT** |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **(JURY TRIAL DEMANDED)** |
| **POPSTROKE HOLDINGS, LLC and POP STROKE SCOTTSDALE, LLC,** ) ) ) | |
| **Defendants.** ) ) | |

### SUMMARY

1.      The case implicates Defendants PopStroke Holdings, LLC and Pop Stroke Scottsdale, LLC ("Defendants") violations of the Arizona Minimum Wage Act's ("AMWA") tip credit and subsequent underpayment of their employees at the Arizona minimum wage rate.  Plaintiffs bring this case as a class action under Rule 23 of the Federal Rules of Civil Procedure for violations of the AMWA.

2.      Defendants pay their tipped employees, including caddies, bartenders, golf associates, and brand ambassadors, below the minimum wage rate by taking advantage of the tip-credit provisions of the AMWA. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a credit against the employer's minimum wage obligations from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." *See* ARIZ. ADMIN. CODE § R20-5-1207; Industrial Commission of Arizona, Frequently Asked Questions (FAQs) About Minimum Wage and Earned Paid Sick Time (Rev. 2/22/2022).[1]

4.      An employer must advise an employee in writing in advance of its use of the tip credit pursuant to the provisions of Section R20-5-1207 of the Arizona Administrative Code. *See* ARIZ. ADMIN. CODE § R20-5-1207 (stating that "an employer intending to exercise a tip credit shall provide written notice to the employee prior to exercising the tip credit"); *see also* Minimum Wage FAQs at 13 (stating that an employer must "provide written notice to each employee prior to exercising the tip credit"). That means that an employer is required to provide written notice of its intent to claim the tip credit at the time of hiring or immediately before placing the worker in a tipped position. *See* Ariz. Admin. Code R20-5-1207(C). The notice must include: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice. *See, e.g.,* Fact Sheet #15: Tipped

---

[1] https://www.azica.gov/sites/default/files/media/22222%20FREQUENTLY%20ASKED%20QUESTIONS_MasterwTOC%20FINAL%20-%20CLEAN%20%281%29.pdf ("FAQs").

Employees under the FLSA issued by the Department of Labor.[2] An employer must also provide a new notice each time the hourly rate of the employee changes. *See* 29 C.F.R. § 516.28(a)(3).  Also, an employer must notify the employee in writing each pay period the amount per hour the employer takes a tip credit. Ariz. Admin. Code R20-5-1207(C).

5.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as kitchen staff. When a tipped employee is required to give up a portion of his/her tips to ineligible workers, the employer loses the ability to claim the tip credit and must pay the tipped worker an hourly rate that is no less than the full minimum wage.  *See* ARIZ. AMIN. CODE § R20-5-1207 ("Employer-required sharing of tips with employees who do not customarily and regularly receive tips in the occupation in which the employee is engaged, including management or food preparers, are not credited towards that employee's minimum wage."); Minimum Wage FAQs at 13-14 ("An employer may not take a tip credit for employees in a tip pool who do not customarily and regularly receive tips, such as food preparers.").

6.      Additionally, an employer must pay the minimum statutory hourly rate ($11.70 in Arizona in 2025). *See* Minimum Wage FAQs at 12.  The AMWA, A.R.S. § 23-350, *et seq.*, establishes the law regarding the payment of wages in Arizona. Arizona law establishes a minimum wage within the State of Arizona and recognizes that, under certain circumstances, employers may claim a tip credit against the wages owed to their tipped employees of up to three dollars per hour ($3.00). *See Hanke v. Vinot Pinot Dining, LLC*, No. Civ. A. 2:15-cv-1873-SMM, Dkt. 51, at 4:6-11 (D. Ariz. Mar. 21, 2018) (discussing that the AMWA allows Arizona employers to take a maximum tip credit of $3.00 against their minimum wage obligations to tipped

---

[2] https://www.dol.gov/agencies/whd/fact-sheets/15-tipped-employees-flsa

employees); *see also Montijo v. Romulus, Inc.*, 2015 WL 1470128, at *5 n. 4 (D. Ariz. Mar. 30, 2015) (same).

7.     Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to their tipped occupation.  *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) ("[A] server who performs unrelated tasks, such as cleaning restrooms, is a dual job employee entitled to the full minimum hourly wage for her unrelated work."); *see also Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *see also* 29 C.F.R. 531.56(e)).

8.     Indeed, Arizona law makes clear that no tip credit can be taken for tasks that constitute maintenance or general preparation work. *See* Minimum Wage FAQs at 14 ("The tip credit is available only for the hours spent in the tipped occupation. Where a tipped employee is routinely assigned to duties associated with a non-tipped occupation, such as **maintenance or general preparation work**, no tip credit may be taken for the hours worked in performing such duties.") (emphasis added).

9.     Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek.  *See, e.g., Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *see also Rafferty v. Denny's Inc.*, 13 F.4th 1166, 1189 (11th Cir. 2021) (noting that the "twenty-percent limitation reasonably construes the dual-jobs regulation").

10.     Defendants violated Arizona law in the following respects:

a. **Violation for failure to inform:**  Defendants failed to inform Plaintiffs of their intent to claim the tip credit to meet their minimum wage obligations at the time Plaintiffs were hired.  Further, Defendants failed to inform Plaintiffs of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the hourly rate paid cannot drop below the minimum tipped wage rate, and (5) that the tip credit shall not apply to any employee who does not receive the notice.  Defendants also failed to provide a new notice each time when the hourly rate of Plaintiffs changed. Also, Defendants failed to notify Plaintiffs in writing each pay period the amount per hour Defendants claimed the tip credit.

b. **Violation for ineligible employees taking tips:**  Defendants violated the law because their Director of Sales would regularly take the cash tips of the Plaintiffs.

c. **Violation for making illegal deductions that reduced the direct wage of Plaintiffs below the minimum required hourly wage for tipped employees:** Plaintiffs were required to purchase and clean their uniform to work for Defendants, which reduced their wages below the minimum hourly wage required for tipped employees. Further, under Arizona law, the costs of all uniforms and the cleaning and maintenance of such uniforms must be paid by the employer.

d. **Violation for failing to pay for all hours worked:** Defendants violated the law by requiring Plaintiffs to conduct online training either without pay or at an hourly rate below the minimum wage.

e. **Violation for performing work unrelated to tipped occupation:** Plaintiffs were required to perform improper types, and excessive amounts of maintenance and general prepatory work, including, but not limited to, cleaning drains, working as a dishwasher to wash cups and silverware; working as a janitor to clean coolers, sweep and mop floors; setting up and taking down tables, cutting fruit, making drink mixes, restocking liquor, and polishing silverware chairs; and other similar tasks.

f. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:** Plaintiffs were required to spent greater than 20% of their time in a week performing non-tip producing side work, including, but not limited to, rolling silverware, refilling condiments, cleaning tables; and other similar tasks.

11.    Therefore, Defendants did not pay Plaintiffs and all similarly situated workers the applicable Arizona minimum wage, in violation of A.R.S. § 23-363. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiffs and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must account for the difference between the wages paid to Plaintiffs and all similarly situated workers and the minimum wage rate. Additionally, Defendants must pay Plaintiffs and all similarly situated workers for all hours of work.

## SUBJECT MATTER JURISDICTION AND VENUE

12.    This Court has jurisdiction over subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiffs' Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiffs and Defendant PopStroke Holdings, LLC are citizens of different states.

13.    While normally a limited liability company is a citizen of each and every state in which any member is a citizen, CAFA creates an exception to this rule. *See* 28 U.S.C. § 1332(d)(10).  Under CAFA "an unincorporated association shall be deemed to be a citizen of the State where *it has its principal place of business* and *the State under whose laws it is organized*." *Id*. (emphasis added). A limited liability company is an unincorporated association under CAFA. *See Ferrell v. Express Check Advance of SC LLC,* 591 F.3d 698, 705 (4th Cir. 2010) ("[W]e conclude that the term 'unincorporated association' in § 1332(d)(10) refers to all non-corporate business entities."); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015) ("It is worth noting that Congress has indeed prescribed a different rule as to unincorporated associations for purposes of the Class Action Fairness Act."); *Kim v. Trulia, LLC*, No. 19-cv-06733, 2021 WL 8743946, at *3 (E.D.N.Y. Mar. 31, 2021) (same).  Therefore, under CAFA, Defendant PopStroke Holdings, LLC is a citizen of Delaware and Florida.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

15.    Plaintiff Krista Wilkinson is an individual residing in Scottsdale, Arizona.

16.    Plaintiff Chantel Arriola is an individual residing in Scottsdale, Arizona.

17.    The Arizona Class Members all current and former tipped employees who worked for Defendants and were paid an hourly rate less than the Arizona minimum wage at any time during the three year period prior to the filing of this action to the present.

18.    Defendant PopStroke Holdings, LLC is a Delaware for-profit limited liability company with its principal place of business in Florida. Said Defendant may be served with process by serving its registered agent:  InCorp Services, Inc., 8825 N. 23rd Avenue, #100, Phoenix, Arizona 85021.

19.    Defendant Pop Stroke Scottsdale, LLC is a domestic for-profit limited liability company doing business in Arizona.  Said Defendant may be served with process by serving its registered agent:  InCorp Services, Inc., 8825 N. 23rd Avenue, #100, Phoenix, Arizona 85021.

20.    Defendant PopStroke Holdings, LLC at all times relevant to this action have had sufficient minimum contacts with the State of Arizona to confer personal jurisdiction. Defendant PopStroke Holdings, LLC conducts business throughout Arizona, contracted with and employed Arizona residents, has Arizona customers, markets to residents of Arizona, and owns property in Arizona.

<u>COVERAGE</u>

21.    At all material times, Plaintiffs were employees of Defendants as defined by A.R.S. § 23-350(2) and A.R.S. § 23-362.

22.    At all material times, Defendants were and continue to be "employers" as defined by A.R.S. § 23-350(3) and A.R.S. § 23-362.

<u>FACTS</u>

23.    Defendants operate a chain of mini-golf courses under the trade name "PopStroke" in Arizona.

24.    Defendants' PopStroke business combines the mini-golf experience with full-service restaurants and employ tipped workers to provide services to the customers.

25.    Defendants' tipped workers include bartenders, caddies, golf associates, and brand ambassadors.

26.    A bartender is a worker that normally works behind a bar and delivers food and drinks to customers of Defendants.

27.    A caddie is a worker that takes drink and food orders from customers and serves the food and drink orders to the customers of Defendants.

28.    A golf associate is a worker that greets customers, serves ice cream to customers, and serves food to customers.

29.     A brand ambassador is a worker who is primarily responsible for serving Defendants' customers during private events.

30.     Defendants pay their tipped employees less than the Arizona minimum wage.

31.     Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their tipped employees, including Plaintiffs and the Class Members.

32.     Plaintiff Wilkinson has worked for Defendants at the PopStroke in Scottsdale, Arizona since January 2024.  She has worked as a brand ambassador and as a bartender for Defendants. She is paid an hourly rate by Defendants that is less than the Arizona minimum wage.

33.     Plaintiff Arriola has worked for Defendants at the PopStroke in Scottsdale, Arizona since September 2023.  She has worked as a bartender for Defendants. She is paid an hourly rate by Defendants that is less than the Arizona minimum wage.

34.     The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited May 29, 2025).

35.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

36.     In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice of failing to comply with the tip credit requirements under Arizona law.  Defendants failed to inform Plaintiffs and the Class Members of Defendants' intent to claim the tip credit to meet their minimum wage obligations at the time Plaintiffs and the Class Members were hired.  Further, Defendants failed to inform Plaintiffs and the Class Members of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by

which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the hourly rate paid cannot drop below the minimum tipped wage rate, and (5) that the tip credit shall not apply to any employee who does not receive the notice. Defendants also failed to provide a new notice each time when the hourly rates of Plaintiffs and the Class Members changed. Also, Defendants failed to notify Plaintiffs and the Class Members in writing each pay period the amount per hour Defendants claimed the tip credit.

37.    Defendants also violated the law by having ineligible employees taking the tips of Plaintiffs and the Class Members. For instance, Defendants' Director of Sales would regularly take the cash tips of the Plaintiffs and the Class Members.

38.    Defendants further violated the law by making illegal deductions that reduced the direct wages of Plaintiffs and the Class Members below the minimum required hourly wage for tipped employees. Indeed, Plaintiffs and the Class Members were required to purchase and clean their uniform to work for Defendants, which reduced their wages below the minimum hourly wage required for tipped employees. Under Arizona law, the costs of all uniforms and the cleaning and maintenance of such uniforms must be paid by the employer.

39.    Moreover, Defendants violated the law by failing to pay Plaintiffs and the Class Members for all hours that they worked. Defendants required Plaintiffs and the Class Members complete online training either without pay or at an hourly rate below the minimum wage.

40.    Furthermore, Defendants violated the law by requiring Plaintiffs and the Class Members to perform work unrelated to their jobs as tipped employees while being paid below the Arizona minimum wage. Indeed, Plaintiffs were required to perform improper types, and excessive amounts of maintenance and general preparatory work, including, but not limited to, cleaning drains, working as a dishwasher to wash cups and silverware; working as a janitor to clean coolers, sweep

and mop floors; setting up and taking down tables, cutting fruit, making drink mixes, restocking liquor, and polishing silverware chairs; and other similar tasks.

41.    Additionally, Defendants violated the law by requiring Plaintiffs and the Class Members to perform non-tipped side work in excess of 20% of the time spent working in the week.  Indeed, Defendants required Plaintiffs and the Class Members to spend greater than 20% of their time in a week performing non-tip producing side work, including, but not limited to, rolling silverware, refilling condiments, cleaning tables; and other similar tasks.

42.    Defendants' illegal policies affected Plaintiffs and the Class Members in the same way.  For instance, tipped employees were required to arrive at least one hour before PopStroke opened for business to perform the maintenance and general preparatory work described in this Complaint. During that time, no tips could be earned because PopStroke was not open for business and there were no customers.

43.    Further, when there was a private event, brand ambassadors were required to arrive 2 to 3 hours before the start of the event to perform maintenance and general preparatory work.  This includes setting up tables and chairs, buffet stations, and decorations, amongst other duties.  No tips could be earned during this period of time because the private event had not started and there would be no customers for the private event. Despite this facts, Plaintiffs and the Class Members were paid less than the minimum wage during the time spent working prior to the start of the event. Similarly, after the customers leave the private event and the private event ends, brand ambassadors were required to remain to clean the event space, including sweeping, mopping, taking apart the buffet stations, taking down decorations, and other similar tasks.  This work took approximately 1-3 hours.  Again, no tips would be earned during this time. And yet, Plaintiffs and the Class Members were paid less than the minimum wage.

44.    Indeed, Defendants required Plaintiffs and the Class Members to perform non-tip producing work prior to the opening of PopStroke and after it closes.

Defendants required Plaintiffs and the Class Members to arrive prior to PopStroke opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendants required Plaintiffs and the Class Members to remain at PopStroke after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they spent one to two hours after PopStroke was closed to perform the cleaning duties.

45.     However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiffs and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

46.     Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work, including maintenance and general preparatory work.

47.     Moreover, Defendants did not track or record the amount of time their tipped employees spent performing non-tipped work, including maintenance and general preparatory work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments but Defendants failed to track to the specific tasks for Plaintiffs and the Class Members.

48.     Defendants use a point-of-sale system to record hours worked by their tipped employees. Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiffs and the Class Members.

49.     In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage

when performing non-tipped work, including maintenance and general preparatory work.

50.     However, Defendants did not allow their tipped employ to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

51.     Moreover, Defendants violated the law by not even paying the minimum "tipped" hourly rate.  Defendants required their tipped employees to pay for items for their uniform, including shirts, pants, and shoes.  These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

52.     Because Defendants paid their tipped employees at the tipped credit hourly rate, any week in which a tipped employee was required to pay for work related expenses for Defendants' business, their compensation fell below the minimum wage rate for tipped employees, thereby negating Defendants' entitlement to claim the tip credit.

53.      In other words, by requiring Plaintiffs and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced by the amount of these uniform costs.  As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

54.     Additionally, Defendants violated the law by requiring Plaintiffs and the Class Members complete online training off the clock.  In the rare occasions when Plaintiffs and the Class Members completed the training on the clock, the Plaintiffs and Class Members were paid at the tip credit hourly rate, and not the Arizona minimum wage.

55.     Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiffs and the Class Members.

56.    As such, Plaintiffs and the Class Members were not compensated at the Arizona minimum wage rate.

57.    Defendants know or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the Arizona law. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out their illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiffs and the Class Members was not based on a good faith and reasonable belief that its conduct complied with the law.

### ARIZONA CLASS ALLEGATIONS

58.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class members:

> **All current and former tipped employees who worked for Defendants and were paid an hourly rate less than the Arizona minimum wage at any time during the three year period prior to the filing of this action to the present.**

59.    <u>Numerosity</u>.  The number of members in the Class is believed to exceed 100.  This volume makes bringing the claims of each individual member of the Class before this Court impracticable.  Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Class will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Class Members, Defendants, and the Court.

60.    <u>Typicality</u>. Plaintiffs' claims are typical of the claims of the Class Members because like the members of the Class, they were subject to Defendants' uniform policies and practices and were compensated in the same manner as the Class Members. Plaintiffs and the Class Members have been uncompensated and/or under-

compensated as a result of Defendants' common policies and practices which failed to comply with Arizona law. As such, Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the Class Members sustained damages arising out of and were directly caused by Defendants' common course of conduct in violation of Arizona law as alleged herein.

61. <u>Adequacy</u>. Plaintiffs are representative parties who will fairly and adequately protect the interests of the Class Members because it is in their interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law. Plaintiffs have also retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Class Members they seek to represent.

62. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

    a. Whether Defendants properly informed Plaintiffs and the Class Members of Defendants' intent to claim the tip credit;

    b. Whether Plaintiffs and the Class Members performed maintenance and general preparatory work while being paid below the minimum wage;

    c. Whether Plaintiffs and the Class Members had their cash tips taken from them by ineligible employees;

    d. Whether Plaintiffs and the Class Members performed work unrelated to their tipped occupation; and

    e. Whether Plaintiffs and the Class Members spent more than 20% of their time at work in a week performing non-tip generating side work.

63. The common issues of law include, but are not limited to;

    a. Whether Defendants can claim the "tip credit";

    b. Whether Defendants violated the Arizona Minimum Wage Act;

c.  Whether Plaintiffs and the Class Members are entitled to compensatory damages;

d.  The proper measure of damages sustained by Plaintiffs and the Class Members; and

e.  Whether Defendants' actions were "willful."

64.    <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

65.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication.  The identity of members of the Class is readily identifiable from Defendants' records.

66.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; and (2) the burden is on Defendants to prove it properly compensated its employees including any potential exemptions that might apply.  Ultimately, a class action is a superior form to resolve the Arizona claims detailed herein because of the common nucleus of operative

facts centered on the continued failure of Defendants to pay Plaintiffs and the Class Members per applicable Arizona laws.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE ARIZONA MINIMUM WAGE ACT

### FAILURE TO PAY THE MINIMUM WAGE

67.      Plaintiffs incorporate the preceding paragraphs by reference.

68.      This count arises from Defendants' violation of the Arizona Minimum Wage Act in connection with their failure to pay the minimum wages. *See* A.R.S. § 23-363.

69.      Plaintiffs and the Class Members were paid hourly rates less than the Arizona minimum wage while working for Defendants. *See* Arizona Administrative Code R20-5-1207 and A.R.S. Title 23.

70.      Plaintiffs and the Class Members were not exempt from the minimum wage requirements under Arizona law.

71.      Defendants' failure to comply with the minimum wage requirements of Arizona law, and, in particular, the tip credit requirements, resulted in Plaintiffs and the Class Members being paid less than the Arizona minimum wage rate.  Defendants' violation of the Arizona law was willful.

72.      Defendants' practice of failing to inform their employees of their intent to rely on the tip credit to meet its minimum wage obligations violates Arizona law.

73.      Defendants' failure to pay the minimum wage to Plaintiffs and the Class Members, in violation of Arizona law was willful and not based on a good faith belief that their conduct did not violate Arizona law.

### COUNT II

### FAILURE TO PAY TIMELY PAY WAGES

74.      Plaintiffs incorporate the preceding paragraphs by reference.

75.     All material times hereto, Defendants were aware of their obligation to pay timely wages pursuant to A.R.S. § 23-351.

76.     Further, Defendants were aware that, under A.R.S. §§ 23-350-353, they were obligated to timely pay all wages due to Plaintiffs and the Class Members.

77.     Defendants failed to timely pay Plaintiffs and the Class Members wages due without a good faith basis for withholding the wages.

78.     Defendants have willfully failed and refused to timely pay wages due to Plaintiffs and the Class Members.  As a result of Defendants' unlawful acts, Plaintiffs and the Class Members are entitled to statutory remedies provided pursuant to A.R.S. § 23-355.

79.     This claim, if certified for class treatment, may be pursued by Plaintiffs on behalf of the Class Members.

## WAGE DAMAGES SOUGHT

80.     Plaintiffs and the Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

81.     Plaintiffs and the Class Members are entitled to reimbursement for all work related expenses they paid.

82.     Plaintiffs and the Class Members are entitled to all misappropriated tips.

83.     Plaintiffs and the Class Members are entitled to treble damages, penalties, and statutory damages.

84.     Plaintiffs and the Class Members are also entitled to recover their attorney's fees and costs.

## JURY DEMAND

85.     Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiffs hereby demand trial by jury.

**PRAYER FOR RELIEF**

86.    For these reasons, Plaintiffs respectfully request that judgment be entered in their favor awarding them and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Treble damages;

c.  Statutory penalties, remedies, and damages;

d.  All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

e.  An order requiring Defendants to correct their pay practices going forward;

f.  Reasonable attorney's fees, costs, and expenses of this action;

g.  Pre and post judgment interest; and

h.  Such other and further relief to which Plaintiffs and the Class Members may be entitled, both in law and in equity.

Dated June 10, 2025.

RESPECTFULLY SUBMITTED BY

By:    ____/s/ Don J. Foty_____

Don J. Foty
Texas Bar No. 24050022
(*pro hac vice motion forthcoming*)
Fazila Issa
Texas Bar No. 24046136
(*pro hac vice motion forthcoming*)
FOTY LAW GROUP
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Telephone:  713-523-0001
Facsimile:  713-523-1116
dfoty@fotylawgroup.com
fissa@fotylawgroup.com

Attorney for Plaintiffs and the Putative Class